UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HUEE TAN                                    CIVIL ACTION

VERSUS                                      NO. 07-4102

JOHN E. POTTER, ETC., ET AL                 SECTION"C" (5)

ORDER AND REASONS

This matter comes before the Court on the motion for summary judgment filed by the plaintiff, Huee Tan ("Tan"), the defendant's motion for summary judgment and the defendant's motion to exclude expert testimony from John J. Muggivan ("Muggivan"). Having considered the record, the memoranda of counsel and the law, the Court has determined that summary judgment in favor of the defendant is appropriate as follows, and that the motion to exclude the expert testimony from Muggivan should be denied.

The plaintiff was employed with the Metairie post office as a letter carrier when he filed "an all-inclusive claim of harassment" based on race and disability with the EEOC, which resulted in a hearing beginning in October 2003 and a decision partially in his favor on April 4, 2004. (Rec. Doc. 49-4). The administrative judge found no racial

1

harassment had been established by the plaintiff.[1]  The administrative law did find that the plaintiff had established that he suffered from a disability,  PTSD, because of a severe attack by a dog while on his route.  The administrative judge found that the defendant perpetrated a hostile working environment because of the fear of being put in "the Box" at work, the defendant's failure to remove "the Box" when requested by Tan.  (Rec. Doc. 49-6, p. 33).  The administrative judge further found:

> ... Mr. Tan was ostracized, disdained by co-workers and supervisors, accused of faking his injuries by co-workers and supervisors, and threatened with placement in"the Box," all within a short time after the dog attack, and about the time that he began to request leave and other accommodations for the injuries he sustained from the attack, including the incipient PTSD.  His leave requests were questioned and he was marked AWOL.  This is consistent with a pattern among Mr. Tan's supervisors of disregarding requests by employees with PTSD for leave and other accommodations."

(Rec. Doc. 49-7, p. 35).  The administrative judge further found "... that Mr. Tan has proven by a preponderance of the evidence that he was harassed by co-workers and Agency supervisors because of his disability, and that no reasonable steps were taken to end the harassment after Mr. Tan complained about it."   (Rec. Doc. 49-7, p. 36).

The administrative law acknowledged that some accommodation had been

---

[1] The administrative judge ruled against the plaintiff on his claim that allegations that he was called "Viet Cong" by a co-worker.  (Rec. Doc. 49-4, p. 8).

granted, but that the plaintiff's request that "the Box" be removed was not granted and the defendant acted in bad faith. That circumstance, along with the "overall hostile environment he encountered based on his disability," resulted in an order that the defendant dismantle "the Box," restore leave used due to the disability-based hostile work environment, and pay compensatory damages in the amount of $75,000 along with attorney's fees and out-of-pocket expenses.[2] (Rec. Doc. 49-7, p. 45). The defendant did not appeal the ruling. (Rec. Doc. 61, Exh. 4). At the same time, the administrative judge found that "Mr. Tan is not disabled from working," "that his therapy will have to continue for at least two years," and that his "suffering was primarily caused by the harassment." (Rec. Doc. 49-7, p. 43).

The plaintiff's focus is on the earlier claims presented to the administrative law judge upon which he prevailed, while the defendant focuses on the plaintiff's claims thereafter. The undisputed facts indicate that the plaintiff failed to return to work in November 2003, during the pendency of the dispute before the administrative judge and remained absent long after the issuance of the April 2004 decision. The defendant supervisor Curtis Bentley sent Tan a letter on July 2, 2004, asking for medical

---

[2] In February 2006, attorney's fees and costs were determined to total $50,517.66, and past out of pocket pecuniary damages in the amount of $21,917.63, less amounts already paid by the agency. (Rec. Doc. 54-5, pp. 10).

documentation within ten days regarding his extended absence. The plaintiff did not respond to this letter and, on August 6, 2004, was charged with AWOL for failure to provide the documentation. (Rec. Doc. 61, Exhs. 5 & 6).

After being placed on AWOL, Tan obtained a letter from his treating social worker, John Muggivan, dated August 11, 2004, advising that Tan was "absent from work for PTSD" but that he "now was released to return" with the social worker's recommendation that Tan seek accommodations that include transfer to a setting with new supervisors and where he does not have to deliver mail on the street; Muggivan also stated that Tan was not disabled "with the above limitations.". (Rec. Doc. 61, Exh. 7). The defendant submitted the request contained in Muggivan's letter to the Postal Service's Louisiana Cluster Reasonable Accommodation Committee ("RAC"), which considered the letter at an August 26, 2004, meeting. Thereafter, Tan was advised in writing on August 30, 2004, that the RAC was going to agree to the accommodations set forth in the administrative judge order in April 2004, that the August 11, 2004, letter from Muggivan "would be used to consider light duty until a decision is made by OWCP on a recent CA2 claim" and that Tan was advised to "seek counseling from Personnel on change of craft to an indoor job." (Rec. Doc. 61, Exhs. 11 & 12).

**Unresolved complaints filed with the EEOC**

On September 2, 2004, Tan filed a "information for pre-complaint counseling" alleging retaliation for the defendant's alleged failure to abide by the April 2004 administrative judge order and harassment, consisting of the correspondence relating to his extended post-hearing absence. (Rec. Doc. 61, Exh. 13). On December 15, 2004, the defendant provided counsel for the plaintiff with a list of relevant job vacancies within 50 miles of New Orleans. (Rec. Doc. 61, Exh. 15). The plaintiff filed a complaint of discrimination in January 2005, No. 4G-700-0182-04, alleging racial and disability-based discrimination and retaliation in the letters of July 2, 2004, August 6, 2004, August 30, 2004, and December 15, 2004. (Rec. Doc. 61, Exh. 17). In February 2005, Tan had still not returned to work and was notified that his health insurance coverage was being terminated; he did not respond to this correspondence and the coverage was subsequently terminated. (Rec. Doc. 61, Exhs. 19, 21).

Tan filed another "information for pre-complaint counseling" in June 2005, again claiming retaliation and disability, again relying heavily on the April 2004 decision of the administrative judge. (Rec. Doc. 61, Exh. 30). His complaint of discrimination filed in January 2006, No. 4G-700-0146-05, alleged that the supervisors "on May 27, 2005, and continuing" "have actively engaged in preventing reasonable accommodation job

request due to a medically diagnosed disability [not] related to my work injury." (Rec. Doc. 61, Exh. 31).

The first of these pending complaints, 4G-700-182-04, was accepted for investigation in February 2006 as alleging race, disability and reprisal discrimination based on the various written notices sent to the plaintiff, and the claim that from August 11, 2004, onward the plaintiff did not receive an appropriate reassignment and his job duties were not modified to eliminate him carrying mail on the street. (Rec. Doc. 61, Exh. 34). These last two complaints of discrimination filed with the EEOC claim were consolidated for hearing with an administrative judge. Thereafter, the plaintiff withdrew that hearing request and filed this suit on August 13, 2007.[3]

The plaintiff apparently filed a grievance through his union outside of this litigation. According to the "Step B Decision" dated January 9, 2009, the plaintiff also received a letter from his supervisor in August 2007 regarding an investigative interview, and also received a "Notice of Proposed Removal" for failure to be regular in attendance/job abandonment dated April 30, 2008. That grievance was resolved by a dispute resolution team in the plaintiff's favor, due to procedural deficiencies in the

---

[3] Jurisdiction is based on Title VII, Section 501 of the Rehabilitation Act and 42 U.S.C. §§ 1981, 1983 and 1985.

removal process. (Rec. Doc. 49-9).

> The Step B Team would also like to add that there are also inexplicable chunks of time between 2004 and 2007 where management and the grievant did not communicate at all. Management was remiss in not following the recommendation of the DRAC. Likewise, the grievant must accept some responsibility for this as well. The file fails to reflect that the grievant was mindful of the progress of his transfer request, nor did he keep management adequately informed concerning his status.

*Id.* According to the plaintiff, this decision "may have resolved all outstanding questions in his case." (Rec. Doc. 99, p. 13). Pending before the magistrate judge is the plaintiff's motion to amend his complaint to allege a "continuing tort." (Rec. Doc. 41).

**Standards for summary judgment**

The defense motion is based on well-established law pertaining to claims of discrimination and retaliation made under Title VII, the Rehabilitation Act and the Civil Rights Act. The plaintiff's motion does not reference or dispute the governing law, but argues the facts, especially the facts set forth in the administrative law judge's April 2004 opinion directed to the plaintiff's earlier complaints of discrimination.

In general, a district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

7

that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Celotex, 477 U.S. at 322-24). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50.

**Discrimination based on race/disability**

Title VII prohibits an employer from "failing or refusing to hire or ... [from]

8

discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination under Title VII through direct or circumstantial evidence. Nasti v. CIBA Specialty Chemicals Corp., 492 F.3d 589, 593 (5th Cir. 2007).

The plaintiff's claim of discrimination based on disability and circumstantial evidence uses the same burden shifting framework set forth for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which requires that a plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. This requires a demonstration that the defendant belonged to a protected group, was qualified for the position, suffered an adverse employment action and was replaced with a similarly qualified person not a member of his group, or in the case of disparate treatment, that similarly situated employees were more favorably treated. Nasti, 492 F.3d at 593; Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003); Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003); Blow v. City of San Antonio, Texas, 236 F.3d 293, 296 (5th Cir. 2001).

If a *prima facie* showing is made, the employer then bears the burden of articulating a legitimate, nondiscriminatory reason for its action. St. Mary's Honor Center. v. Hicks, 509 U.S. 502, 506-07 (1993); Nasti, 492 F.3d at 593. The defendant must state, "through the

9

introduction of admissible evidence, reasons for its actions which, <u>if believed by the trier of fact</u>, would support a finding that the unlawful discrimination was not the cause of the employment action." <u>St. Mary's</u>, 509 U.S. at 507 (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254- 55 (1981)) (emphasis original).

If the defendant articulates such a reason, the presumptions of the framework dissipate and the focus shifts to the ultimate question: whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff. <u>Nasti</u>, 492 F.3d at 593. The plaintiff may show intentional discrimination by direct or circumstantial evidence of discriminatory intent. <u>Grimes v. Texas Dept. Of Mental Health & Mental Retardation</u>, 102 F.3d 137, 140-41 (5th Cir. 1996). This burden can be satisfied with evidence that the employer's reason is a pretext for discrimination, either through evidence of disparate treatment or by showing that the proffered explanation is false or unworthy of credence. <u>St. Mary's</u>, 509 U.S. at 511; <u>Nasti</u>, 492 F.3d at 593. The plaintiff may attempt to overcome the employer's proffered nondiscriminatory reason by providing evidence that the employer's legitimate, nondiscriminatory reason is merely pretextual.

The plaintiff "retains the ultimate burden of persuasion throughout the case." <u>Faruki v. Parsons S.I.P., Inc.</u>, 123 F.3d 315, 319 (5th Cir. 1997) (citing <u>Burdine</u>, 450 U.S. at 253). A plaintiff can meet his burden of demonstrating pretext and thereby establish a jury issue to avoid summary judgment or judgment as a matter of law "if the evidence

10

taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race, sex or national origin] was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 374, fn 23 (5th Cir. 2000) (explaining that this analysis first formulated in Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir.1996), survives the Supreme Court's abrogation of Rhodes in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)). A *prima facie* case and sufficient evidence of pretext would permit a court or jury to find unlawful discrimination, without additional independent evidence of discrimination, though such a showing will not always be adequate to sustain a jury's finding of liability. Reeves, 530 U.S. at 142-49.

Here, the plaintiff's claim of discrimination fails on several grounds. The overriding problem with the plaintiff's case is his interpretation of the reach of the April 2004 administrative judge opinion. Contrary to the plaintiff's argument, that opinion clearly stated that the plaintiff was not disabled from working and had suffered damages because of the harassment discussed therein. The resulting order was met with compliance by the defendant.[4]

---

[4] The Court notes that the administrative law judge found against Tan on his claims of race-based discrimination. Similarly, this record is devoid of any

Instead, the plaintiff's two current complaints were made after being put on AWOL in August 2004, with the first challenging the various administrative steps that led to that result, and the second complaint dealing with what happened to the requests for accommodation first made by his social worker on August 11, 2004 and the termination of health benefits. The plaintiff is unable to prove, and does not attempt to prove, a *prima facie* case of disability and/or race discrimination under the undisputed facts. The type of medical testimony presented to the administrative judge is not presented here and no adequate showing has been made that continuing treatment by a social worker constitutes a disability on the job so as to remain absent from work. The Court also finds that the defendant has otherwise established that the requested post-AWOL accommodations were not reasonable given the plaintiff's job as a letter carrier, and that reassignments of postal workers are governed by a collective bargaining agreement.

In addition, the plaintiff is unable to establish that the reasons provided by the defendant for its pre-August 11, 2004 or post-August 11, 2004, actions are pretextual. Instead, the record reflects that the defendant adhered to the first administrative judge's order and otherwise focused its subsequent responses on the requirements of the relevant employment handbooks, regulations and union collective bargaining agreements. This

---

additional evidence of race-based discrimination.

reliance, despite any confusion on the part of the plaintiff, is sufficient to articulate a legitimate, nondiscriminatory reason for its actions for purposes of summary judgment. The plaintiff, who undisputedly remained absent from work without protection from the administrative judge April 2004 order, is unable to establish that the current challenged actions of the defendant were pretextual.

**Retaliation**

Under 42 U.S.C. § 2000e(a), employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." In order to make a *prima facie* case of retaliation, the plaintiff must prove (1) he was engaged in protected activity; (2) the defendant took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment activity. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).

The first round of EEO hearings may have involved a "protected activity," but that circumstance does not elevate the plaintiff's additional absence to a "protected activity," especially where the plaintiff was working prior to the hearings and found not

13

to be disabled from work at the hearings. Prior to the issuance of the April 2004 opinion, the plaintiff can not show that he made a request for additional accommodations with regard to any claim, or that his additional accommodation was medically required because of a disability. He did not make a request for additional accommodations between April 2004 and August 11, 2004, when he was absent and ignoring the written correspondence from the defendant. Instead, the plaintiff was absent for an extended period of time and did not make his first request for additional accommodations and transfer until after being put on AWOL in accordance with the defendant's standard procedures.

In addition, the defendant has presented proof that the plaintiff's supervisors did not "actively engage[] in preventing reasonable accommodation job request" at all. This allegation remains unsupported with proof by the plaintiff. Instead, the plaintiff can not establish that there is a causal connection between his filing of any EEO grievances and the activity leading up to his being put on AWOL, a causal connection between his filing of EEO grievances and any failure to reassign or transfer thereafter, or a causal connection between his filing of EEO grievances and the loss of his health benefits.

In sum, the plaintiff's problems here were based on his expanded reading of the administrative judge order, and the mistaken belief that because of that ruling, he could

remain absent indefinitely from work and ignore correspondence from the defendant. Instead, the undisputed facts show that the defendant complied with that administrative judge's order, and the evidentiary bases for the finding that the plaintiff is disabled from work, or that the plaintiff's additional requests for accommodations were reasonable, is lacking in the record relevant to the claims before this Court.

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by the plaintiff is DENIED and the motion for summary judgment filed by the defendant is GRANTED. (Rec. Docs. 36, 72). Within 5 days, the parties shall submit memoranda directed to what claims remain, if any.

IT IS FURTHER ORDERED that the defendant's motion to exclude expert testimony from John J. Muggivan is DENIED. (Rec. Doc. 81). While the reported opinions of Muggivan may not strictly comply with Fed. R. Civ. P. 26 or Fed. R. Evid. 702, they provide all the relevant information required. Muggivan is presumably available for deposition if the government seeks more information.

New Orleans, Louisiana, this 17th day of July, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE